## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| DUKE BRADFORD, *et al.*, <br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF LABOR, *et al.*, <br> Defendants. | CIVIL ACTION NO.: 1:21-cv-03283 |

### MOTION FOR AN INJUNCTION PENDING APPEAL

Pursuant to Rule 62(d) of the Federal Rules of Civil Procedure, Plaintiffs Duke Bradford, Arkansas Valley Adventure, LLC d/b/a AVA Rafting and Zipline (AVA) and the Colorado River Outfitters Association (CROA), move for an injunction pending interlocutory appeal prohibiting Defendants, Pres. Joseph R. Biden, Sec. Martin J. Walsh, Acting Admin. Jessica Looman, the U.S. Dept. of Labor, and the Wage & Hour Division (collectively DOL or the Department) from enforcing the rule, *Increasing the Minimum Wage for Federal Contractors*, 86 Fed. Reg. 67,126 (Nov. 23, 2021), pending final judgment in this matter.

Unless enjoined, DOL's rule will take effect on January 30, 2022, and force Plaintiffs and CROA's members to incur significant compliance, implementation, and direct wage costs. Those costs are not recoverable from Defendants, however, and are thus irreparable. Plaintiffs have raised substantial questions concerning the rule's validity, particularly in light of its significant impact and the novelty of the issues presented in this case. Rather than risk the irreparable harms to Plaintiffs, this Court should enjoin the rule pending appeal.

### FACTS AND PROCEDURAL HISTORY

On April 27, 2021, President Biden issued Executive Order 14026, *Increasing the Minimum Wage for Federal Contractors*, imposing a $15/hr minimum wage rule for government contractors. 86 Fed. Reg. 22,835. On November 23, 2021, DOL issued its final rule implementing the order, effective January 30, 2022. *Increasing the Minimum Wage for Federal Contractors*, 86 Fed. Reg. 67,126.

1

Mr. Bradford, AVA, and CROA filed a complaint for declaratory relief against Defendants on December 7, 2021, challenging the rule. ECF No. 1. They then moved for a preliminary injunction on December 9, 2021. ECF No. 7. Defendants filed an opposition on December 27, 2021, ECF No. 21, to which AVA and CROA replied on December 29, 2021. ECF No. Doc. 22.

This Court held an evidentiary hearing on January 6, 2022, and then on January 24, 2022, it denied the request for a preliminary injunction in a written opinion. ECF No. 31. The opinion addressed only one of the relevant factors—"likelihood of success on the merits." ECF No. 31 at 16. Because it concluded that Plaintiffs were wrong in their legal theory, this Court denied the "motion for a preliminary injunction without addressing the remaining preliminary injunction factors." *Id.* at 46.

Plaintiffs filed a notion of interlocutory appeal on January 26, 2022. ECF No. 33. They now file this motion for an injunction pending appeal. Plaintiffs will also file a motion for an injunction pending appeal in the Tenth Circuit pursuant to Rule 8 of the Federal Rules of Appellate Procedure as soon as the appeal is docketed.

## ARGUMENT

Federal Rule of Civil Procedure 62(d) allows a district court to "grant an injunction" "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction[.]" "This rule does not limit the power of the appellate court or one of its judges or justices . . . to stay proceedings—or suspend, modify, restore, or grant an injunction—while an appeal is pending." Fed. R. Civ. P. 62(g).

Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. *See* Fed. R. Civ. P. 62(d); Fed. R. App. P. 8. "Under both Rules, however, the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest

lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *accord Nken v. Holder*, 556 U.S. 418, 434 (2009).

While there is "substantial overlap" between this standard and that governing preliminary injunctions, they are not identical. *Nken*, 556 U.S. at 434. In the Tenth Circuit, a party seeking an injunction must show: "(a) the likelihood of success on appeal; (b) the threat of irreparable harm if the stay or injunction is not granted; (c) the absence of harm to opposing parties if the stay or injunction is granted; and (d) any risk of harm to the public interest." *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) (quoting 10th Cir. R. 8.1).

But most critically, if a party "can meet the other requirements for a stay pending appeal, they will be deemed to have satisfied the likelihood of success on appeal element if they show questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Id*. at 1020 (internal citation and quotation marks omitted); *see also In re Revel AC, Inc.*, 802 F.3d 558, 568–69 (3d Cir. 2015) (a sufficient degree of success for an injunction pending appeal is "a reasonable chance, or probability, of winning," but "the likelihood of winning on appeal need not be more likely than not") (internal citations and quotation marks omitted).[1] Thus, where serious legal questions are presented, an injunction on appeal may be necessary even when an injunction was not required at the trial level. *See, e.g.*, *O Centro Espirita Beneficiente Uniao De Vegetal v. Ashcroft*, 314 F.3d 463, 467 (10th Cir. 2002) (staying injunction on appeal without addressing the validity of the

---

[1] The Tenth Circuit previously applied this same relaxed standard in certain circumstances when reviewing a district court's denial of a preliminary injunction under Rule 65. *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). That standard has been abrogated with respect to Rule 65, in reliance on the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). *Id*. However, because the *Winter* decision did not address the separate standard of whether a *stay pending appeal* is appropriate, the lower standard applies in this context. *See Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37, 37 n.7 (2d Cir. 2010) (noting that the "serious question" standard remains the "standard for granting a stay pending appeal," which need have a likelihood of success that is "better than negligible" but need not be "more likely than not") (quoting *Nken*, 556 U.S. at 434).

underlying injunction); *Cigar Ass'n of Am. v. U.S. FDA.*, 317 F. Supp. 3d 555, 561 (D.D.C. 2018) (granting stay despite low likelihood of success on the merits); *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 105–07 (D.D.C. 2018) (observing that "a 'serious legal question' could help tip the scales . . . when the likelihood of success on appeal is low"); *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 13–14 (D.D.C. 2014) (where decision "presented difficult and substantial legal questions . . . and was at times, a close one," stay of injunction on appeal was necessary).

### I. PLAINTIFFS HAVE DEMONSTRATED SUBSTANTIAL QUESTIONS ON THE MERITS, MAKING THE ISSUE DESERVING OF MORE DELIBERATE INVESTIGATION

Even though this Court has already ruled against Plaintiffs' merits arguments, this case presents substantial legal questions that warrant an injunction pending appeal. By definition, every request for an injunction pending appeal that arises in this context occurs *despite* a rejection of the arguments presented to the court. But so long as the case presents "serious legal questions," "the fact that the court does not share Plaintiffs' conviction that it erred is not fatal to their request for an injunction pending appeal." *Cigar Ass'n of Am.*, 317 F. Supp. 3d at 561. Here, given the novel legal issues and the significant scope of the challenged rule, there are serious legal questions that should be reviewed by the Tenth Circuit *before* the rule takes effect.

First, this case presents a wholly novel legal issue of great significance. There have been no cases deciding whether the President's authority under the Procurement Act extends to nonprocurement contractors. As this Court noted, "plaintiffs are correct that outfitters are not procurement contractors," ECF No. 31 at 18, which is a point that even DOL concedes. *See* 86 Fed. Reg. at 67,152 (describing outfitters as "non-procurement contractors"). But none of the cases interpreting the scope of the Procurement Act that supported this Court's opinion addressed that unique scenario. *See, e.g.*, *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 914 (10th Cir. 2004) (addressing allocation of government office space); *UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360, 362, 366–67 (D.C. Cir. 2003) (addressing rule governing "government

4

contracts involving more than $100,000"); *AFL-CIO v. Kahn*, 618 F.2d 784, 786 (D.C. Cir. 1979) (en banc) (wage and price controls for all direct government contracts "worth more than $5 million"). Because Plaintiffs' argument centers largely on the scope of the Procurement Act, and its ability to apply beyond the *procurement* context, at minimum this case presents a novel issue worthy of deeper consideration.

Additionally, while this case presents a novel issue concerning the scope of a statute that, in any context, has been rarely interpreted, recent litigation signals deep disagreements with the prevailing "lenient" standard of review adopted by this Court. At least five different district courts have recently vacated a separate executive order issued under the Procurement Act because it fails to meet the economy and efficiency standard. *See, e.g.*, *Feds for Med. Freedom v. Biden*, No. 3:21-CV-356, 2022 WL 188329, at *5 (S.D. Tex. Jan. 21, 2022); *Florida v. Nelson*, No. 8:21-cv-2524, 2021 WL 6108948, at * 11 (M.D. Fla. Dec. 22, 2021); *Missouri v. Biden*, No. 21-cv-1300, Docket No. 36 (E.D. Mo. Dec. 20, 2021); *Georgia v. Biden*, No. 21-cv-163, 2021 WL 5779939, at *9 (S.D. Ga. Dec. 7, 2021); *Kentucky v. Biden*, No. 3:21-cv-55, 2021 WL 5587446, at *6 (E.D. Ky. Nov. 30, 2021). Appeals are pending in *all* of these cases. And the Sixth Circuit, moreover, has already issued a precedential opinion finding the order likely unlawful. *Kentucky v. Biden*, No. 21-6147, 2022 WL 43178, at *12 (6th Cir. Jan. 5, 2022).

These recent decisions have adopted analysis in conflict with this Court's. For instance, while this Court accepted DOL's assertion that the wage rule could "bolster economy and efficiency in federal procurement because raising the minimum enhances worker productivity and generates higher-quality work by boosting workers' health, morale, and effort; reducing absenteeism and turnover; and lowering supervisory and training costs," ECF No. 31 at 26 (citation omitted), nearly identical statements of reasons were rejected by these other courts. Indeed, one court dismissed arguments that the vaccine order would "(1) decrease worker absence; (2) decrease labor costs; and (3) improve efficiency at work sites," because they did not relate to "*procurement and supply*" and it "strained credulity" to think that Congress meant to empower the President in

such a fashion. *Kentucky*, 2021 WL 5587446, at *6 (emphasis in original, citation omitted). The Sixth Circuit refused to find fault with that decision. *See Kentucky*, 2022 WL 43178, at *12.

Separately, while this Court found the "persuasiveness" of the Fourth Circuit's decision in *Liberty Mut. Ins. Co. v. Friedman*, 639 F.2d 164, 170 (4th Cir. 1981) to be "minimal," ECF No. 31 at 23 n.6, several of these recent decisions relied heavily on the *Liberty Mutual* analysis. *See Florida*, 2021 WL 6108948, at *11 (applying the *Liberty Mutual* standard that Procurement Act orders be "reasonably within the contemplation" of the statutory goals to preserve the separation of powers); *Georgia*, 2021 WL 5779939, at *10 (same).

Next, this Court's analysis on the scope of the major questions doctrine not only implicates broader issues of administrative law but is in tension with the Supreme Court's latest statements concerning this issue. This Court declined to apply the doctrine because even if the challenged rule was "economically significant" "the economic effect is far below the range that the Office of Management and Budget quantifies to have a measurable effect, in macroeconomic terms, on the gross domestic product," "which is $52.3 billion." ECF No. 31 at 31. "Rather, the Biden Rule would have a small economic impact and is clearly within DOL's area of expertise." *Id*. But just a few weeks before this Court's opinion, the Supreme Court applied the doctrine based on its unqualified statement that it applies whenever an agency exercises "powers of vast economic and political significance." *NFIB. v. OSHA*, 142 S. Ct. 661, 665 (2022) (citation omitted). Moreover, in a concurring opinion Justice Gorsuch, joined by two others, noted that "[f]ar less consequential agency rules [than a vaccine mandate] have run afoul of the major questions doctrine," such as rate regulation for telephone companies. *Id.* at 668 (citing *MCI Telecommunications Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 231, (1994) (eliminating rate-filing requirement that might affect the prices of, at most, "40% of a major sector" of long-distance carriers)).

Finally, given the economic stakes at issue, this case certainly warrants close scrutiny. According to the Department, Plaintiffs are among the estimated 500,000 firms that will pay direct wages increases of "$1.7 billion per year over 10 years," with "average annualized direct employer costs [] estimated to be $2.4 million" for each firm. 86 Fed. Reg. at 67,194. Even assuming that impact

6

does not require application of the major questions doctrine, it is hardly insignificant. Instead, it presents a serious consequence worthy of further consideration. *See Cigar Ass'n of Am.*, 317 F. Supp. 3d at 563 (granting injunction pending appeal for new labels for cigars and pipe tobacco despite low odds of success on the merits, in part, because the plaintiffs would suffer "millions of dollars" in new compliance costs).

## II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM

"Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury." *Chamber of Com. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010). Compliance costs from a government rule, such as "implementation and training expenses," coupled with the risk of future consequences for "non-compliance," constitutes irreparable injury when the government is immune from damages because of sovereign immunity. *Id.* at 756-57, 771. The APA grants the sovereign immunity from monetary damages. *See* 5 U.S.C. § 702 (permitting only relief "other than money damages"). Thus, "the general rule that economic harm is not normally considered irreparable does not apply where there is no adequate remedy to recover those damages, such as in APA cases." *Cloud Peak Energy Inc. v. U.S. Dep't of Interior*, 415 F. Supp. 3d 1034, 1043 (D. Wyo. 2019) (citations omitted); *see also California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) ("harm is irreparable here because the states will not be able to recover monetary damages" because of 5 U.S.C. § 702), *remanded on other grounds by* 141 S. Ct. 192 (2020). If a plaintiff must "incur at least *some* economic costs in complying with" an administrative rule, it will suffer irreparable injury, because "those compliance costs will not be recoverable later even if [the plaintiff] win[s] on the merits due to the federal government's sovereign immunity from monetary damages." *Cloud Peak*, 415 F. Supp. 3d at 1043.

Plaintiffs have made a strong showing of the likelihood of irreparable harm. According to the Department, Plaintiffs are among the estimated 500,000 firms that will pay direct wages increases of "$1.7 billion per year over 10 years," with "average annualized direct employer costs [] estimated to be $2.4 million" for each firm. 86 Fed. Reg. at 67,194. Plus, Plaintiffs will incur additional "regulatory familiarization costs," "implementation costs," "compliance costs, increased consumer

costs, [] reduced profits," reduced competitiveness, and "disemployment" of their workers. *Id.* at 67,204, 67,206, 67,208, 67,211. And, as Mr. Bradford testified, he expected to expend "between five and $10,000" just on attorney costs to ensure compliance before the rule took effect. Preliminary Hearing Transcript, Bradford Testimony at 20:1–11 (Jan. 6, 2022). He also explained that his company would need to spend more on wage costs, hire more staff, limit hours for existing staff, and provide more housing for employees, all of which "will drive expenses up." *Id.* at 20:18–21:21. He would also need to eliminate overnight rafting trips entirely or else the "price would go beyond what our public could afford." *Id.* at 21:22–22:2. The rule would further make AVA less competitive with other outfitters not subject to the rule. *Id.* at 21:12–23:2. Ultimately, "costs would go up and revenue would go down," under the new rule. *Id.* at 23:21. Just as in *Edmondson*, which involved a challenge to a regulation that imposed new obligations on government contractors, Plaintiffs will suffer irreparable harm without the injunction because they will be forced to expend resources to comply with the rule (or face enforcement actions), but those costs cannot be recovered from the Department should they ultimately prevail. *See* 594 F.3d at 770–71.

### III. THE EQUITIES FAVOR AN INJUNCTION

A party seeking a preliminary injunction must demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. A government "does not have an interest in enforcing a law that is likely" invalid. *Edmondson*, 594 F.3d at 771. Instead, "the public interest will perforce be served by enjoining the enforcement of the invalid provisions of [] law." *Id.* (citation omitted). Indeed, when a rule exceeds an agency's authority, the court should not "weigh [] tradeoffs" between its intended effect and harms. *NFIB*, 142 S. Ct. at 666. "In our system of government, that is the responsibility of those chosen by the people through democratic processes." *Id*. Even in the context of a decision where the Court has already rejected a merits challenge to agency action, the mere *threat* of unlawful government conduct sways the equities against the agency. *See Cigar Ass'n of Am.*, 317 F. Supp. 3d at 563 (agency had inadequate interest in immediate enforcement of rule that was potentially unlawful).

8

Given the substantial legal issues at play and the risk that DOL has not complied with limits on its authority, the equities favor an injunction pending appeal. *See id.* The rule will also result in, what DOL accepts to be, billions of dollars in potentially unlawful compliance expenditures in the rule's first year, which is an egregious harm to Plaintiffs. *See* 86 Fed. Reg. at 67,194. On the other side of the ledger, DOL will be denied, at most, immediate enforcement of its rule.

## CONCLUSION

Given the remaining equities and the substantial legal questions at issue, this Court should issue an injunction pending appeal.

January 27, 2022

Respectfully submitted,

*/s/ Caleb Kruckenberg*
CALEB KRUCKENBERG
MICHAEL A. POON
STEVEN M. SIMPSON
Pacific Legal Foundation
3100 Clarendon Blvd, Suite 610
Arlington, VA 22201
202-888-6881
ckruckenberg@pacificlegal.org
mpoon@pacificlegal.org
ssimpson@pacificlegal.org
*Counsel for Plaintiffs*

9

### **CERTIFICATE OF SERVICE**

      I hereby certify that on January 27, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

> */s/ Caleb Kruckenberg*
> CALEB KRUCKENBERG
> Pacific Legal Foundation
> 3100 Clarendon Blvd, Suite 610
> Arlington, VA 22201
> 202-888-6881
> CKruckenberg@pacificlegal.org
> *Counsel for Plaintiffs*