IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-03283-PAB-STV

DUKE BRADFORD,
ARKANSAS VALLEY ADVENTURE, LLC, d/b/a AVA Rafting and Zipline, and
COLORADO RIVER OUTFITTERS ASSOCIATION,

    Plaintiffs,

v.

U.S. DEPARTMENT OF LABOR,
U.S. DEPARTMENT OF LABOR, WAGE & HOUR DIVISION,
JOSEPH R. BIDEN, President of the United States,
MARTIN J. WALSH, U.S. Secretary of Labor, and
JESSICA LOOMAN, Acting Administrator,

    Defendants.

## ORDER

This matter is before the Court on plaintiffs' Motion for an Injunction Pending Appeal [Docket No. 34]. Defendants responded. Docket No. 37.

## I. BACKGROUND

On December 9, 2021, plaintiffs filed a motion for a preliminary injunction to enjoin the enforcement of the Department of Labor's rule *Increasing the Minimum Wage for Federal Contractors*, 86 Fed. Reg. 67,126 (Nov. 24, 2021) (to be codified at 29 C.F.R. pts. 10, 23) (the "Biden Rule"), which implements President Joseph R. Biden's executive order *Increasing the Minimum Wage for Federal Contractors*, Exec. Order No. 14,026, 86 Fed. Reg. 22,835 (Apr. 27, 2021) ("E.O. 14026" or the "Biden Order"). *See generally* Docket No. 7. The Biden Rule, issued pursuant to President

Biden's authority under the Federal Property and Administrative Services Act, 40 U.S.C. §§ 101, *et seq.* (the "Procurement Act"), takes effect on January 30, 2022. 86 Fed. Reg. at 67,126. On January 24, 2022, the Court denied plaintiffs' preliminary injunction motion, finding that plaintiffs had not shown that they were likely to succeed on any of their claims.[1] Docket No. 31. Additional background facts and procedural history can be found in that order, *see generally id.*, and will not be repeated here except as necessary to resolve plaintiffs' motion.

On January 26, 2022, plaintiffs filed a notice of appeal. Docket No. 33. Plaintiffs now seek to enjoin enforcement of the Biden Rule pending appeal. Docket No. 34.

## II. LEGAL STANDARD

"While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d); *see also* Fed. R. App. P. 8(a). In evaluating a motion for an injunction pending appeal, the Court considers (1) whether the movants have made a strong showing that they are likely to prevail on the merits of their appeal; (2) whether the movants will be irreparably injured if the injunction is not granted; (3) whether granting the injunction will

---

[1] Plaintiffs bring three claims: (1) the Biden Rule exceeded President Biden's authority in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C) ("APA"); (2) the Biden Rule is arbitrary and capricious under the APA, 5 U.S.C. § 706(2)(A); and (3) President Biden violated the Constitution's separation of powers and non-delegation doctrines by exercising legislative power without clear congressional authorization. Docket No. 1 at 15–19, ¶¶ 51–77. In the motion presently before the Court, however, plaintiffs focus exclusively on their first and third claims.

2

substantially harm the opposing parties; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *In re Kim*, No. 16-cv-02928-PAB, 2018 WL 5267157, at *1 (D. Colo. Oct. 23, 2018) ("A motion for stay pending appeal is governed by the same standards applicable to preliminary injunction motions."); *Evans v. Bd. of Cnty. Comm'rs of Boulder*, 772 F. Supp. 1178, 1181 (D. Colo. 1991). The Tenth Circuit's rules provide the same four-factor showing. *See* 10th Cir. R. 8.1(B)–(E). The Supreme Court has explained that "[t]here is substantial overlap between [the factors for a stay or injunction pending appeal] and the factors governing preliminary injunctions; not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). Similarly, the Tenth Circuit has explained that a "motion for stay pending appeal is subject to the exact same standards" as a motion for a preliminary injunction. *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015) (citing *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001) ("In ruling on such a request, this court makes the same inquiry as it would when reviewing a district court's grant or denial of a preliminary injunction.")).

Plaintiffs, however, argue that the Court should apply a more relaxed standard. Docket No. 34 at 3. Plaintiffs contend that, "if a party 'can meet the other requirements for a stay pending appeal, they will be deemed to have satisfied the likelihood of success on appeal element if they show questions going to the merits so serious,

3

substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation.'" *Id.* (quoting *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996)); *see also Walmer v. Dep't of Def.*, 52 F.3d 851, 854 (10th Cir. 1995) ("We have adopted a modified likelihood of success requirement in the Tenth Circuit.  If the movant has satisfied the first three requirements for a preliminary injunction, the movant may establish likelihood of success by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." (citation omitted)).

     *McClendon* and *Walmer*, however, are no longer followed, and the Tenth Circuit and Supreme Court have explained that the relaxed approach plaintiffs ask the Court to apply is "not available after the Supreme Court's ruling in *Winter*." *N.M. Dep't of Game & Fish v. Dep't of the Interior*, 854 F.3d 1236, 1246 (10th Cir. 2017) (citing *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016) ("[O]ur modified test is inconsistent with the Supreme Court's recent decision in [*Winter*]. . . . Under *Winter*'s rationale, any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible."); *Planned Parenthood Ass'n of Utah v. Herbert*, 839 F.3d 1301, 1310 (10th Cir. 2016) (Gorsuch, J., dissenting from the denial of rehearing en banc) (noting that, although "this court once suggested that the plaintiff's burden on the likelihood of success factor may be relaxed when the other preliminary injunction factors are satisfied[,] . . . the Supreme Court has since cast doubt on that judgment")).  Plaintiffs acknowledge that the relaxed standard no longer applies for preliminary injunctions, but contend that, because *Winter*

"did not address the separate standard of whether a *stay pending appeal* is appropriate, the lower standard applies in this context." See Docket No. 34 at 3 n.1.  Plaintiffs, however, provide no Tenth Circuit authority for this proposition, and, as defendants note, the Tenth Circuit recently held that, "[i]n deciding whether to grant a stay pending appeal, [the court] consider[s] the traditional [preliminary injunction] factors." *Firestorm Pyrotechnics, Inc. v. Richardson*, No. 21-9572, order at 1 (10th Cir. Nov. 8, 2021).  The court in *Firestorm* continued, "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible," *id.* at 2 (quoting *Diné*, 839 F.3d at 1282), and "[a] motion for stay pending appeal is subject to the exact same standards [as a motion for preliminary injunction]." *Id.* (quoting *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015)).

This is consistent with district courts across this circuit. *See, e.g.*, *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 423 F. Supp. 3d 1066, 1072 (D. Colo. 2019) ("The Tenth Circuit has recently clarified in connection with the appeal of a preliminary injunction that 'any modified test which relaxes one of the prongs' and 'thus deviates from the standard test is impermissible.'  This holding has been interpreted to also apply to a stay pending an appeal, given the substantially same standards governing grants of preliminary injunctions and stays pending appeal." (quoting *Diné*, 839 F.3d at 1282)); *In re Way to Grow, Inc.*, No. 18-cv-3245-WJM, 2019 WL 669795, at *2 n.2 (D. Colo. Jan. 18, 2019) (rejecting relaxed approach because it is "ignorant of, and contrary to, the Supreme Court's pre-existing requirement for a 'strong showing that [the appellant] is likely to succeed,'" *Hilton*, 481 U.S. at 776; contradictory

5

to the Supreme Court's characterization of the first two *Nken* factors as the "most critical," *Nken* 556 U.S. at 434; and contrary to *Diné*'s rejection of the relaxed preliminary relief standard, *Diné*, 839 F.3d at 1282; concluding that, "[r]egardless, whether the 'somewhat relaxed' principle remains valid or not, the Court on the current record cannot 'relax' the first factor to the point where the other three factors might compensate for [movants'] deficiencies on the merits"); *In re Kim*, 2018 WL 526157, at *1 n.1 (rejecting modified approach in stay pending appeal context in light of *Diné* and *Winter*); *Zeppelin v. Fed. Highway Admin.*, 305 F. Supp. 3d 1189, 1200 (D. Colo. 2018) (noting Tenth Circuit's abrogation of modified standard for preliminary relief); *see also Aposhian v. Barr*, 2019 WL 8195243, at *1 (D. Utah Mar. 20, 2019) ("Mr. Aposhian's primary argument in requesting the issuance of an injunction is that the relaxed 'serious questions' test somehow retains vitality in the context of a Rule 62 motion for an injunction pending appeal of a denial of injunctive relief.  But accepting Mr. Aposhian's argument would require this court to adopt a narrow and disingenuous reading of the Supreme Court's clear statements regarding the showings necessary to obtain the 'extraordinary remedy' of injunctive relief in any context."); *Blue Valley Hosp., Inc. v. Azar*, 2018 WL 2986686, at *3 (D. Kan. June 14, 2018) (same); *In re Abengoa Bioenergy Biomass of Kansas, LLC*, 2018 WL 1613667, at *3 (Bankr. D. Kan. Mar. 29, 2018) (same); *Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1091–93 (D.N.M. 2017) (same).  The Court will not "approach opinions of the Supreme Court with a view to reaching the narrowest construction possible."  *Diné*, 839 F.3d at 1282.

Because there is "substantial overlap" between the factors required for a stay or

injunction pending appeal and a preliminary injunction, since "similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined," *Nken*, 556 U.S. at 434, and because, "[w]hen considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other," *id.* at 438 (Kennedy, J., concurring), the Court will not apply a modified or relaxed test to plaintiffs' motion for an injunction pending appeal.

## III. ANALYSIS

The bulk of plaintiffs' motion discusses whether plaintiffs have presented a "substantial question." *See* Docket No. 34 at 4–7. Whether the dispute concerns a "substantial question," however, is not one of the four factors that the Court considers on a motion for a stay or an injunction pending appeal. *See Hilton*, 481 U.S. at 776; *Winter*, 555 U.S. at 20. As previously mentioned, those factors are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776. The Supreme Court has stated, with respect to the first factor, that "[i]t is not enough that the chance of success on the merits be 'better than negligible'" or that success be a "mere possibility." *Nken*, 556 U.S. at 434.

Plaintiffs do not explain why they are likely to succeed on the merits. Instead, relying on the outdated substantial question test, plaintiffs argue that this case presents a "wholly novel legal issue of great significance" about whether the President exceeded

his authority under the Procurement Act. Docket No. 34 at 4. The purpose of the Procurement Act is "to provide the Federal Government with an economical and efficient system" for (1) "[p]rocuring and supplying property and nonpersonal services," (2) "[u]sing available property," (3) "[d]isposing of surplus property," and (4) "[r]ecords management." 40 U.S.C. § 101. The Procurement Act permits the President to "prescribe policies and directives that the President considers necessary to carry out" the Act, and policies must be consistent with the Act. *Id.* at § 121(a). Courts have interpreted this language to mean that a president's policy or directive issued under the Procurement Act must have a "sufficiently close nexus to the values of providing the government an economical and efficient system for . . . procurement and supply." *UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003) (citation and quotation omitted).

Plaintiffs argue that no court has decided whether the President's authority under the Procurement Act applies to nonprocurement contractors. Docket No. 34 at 4. Plaintiffs have not shown why that equates to a "strong showing" that they are likely to succeed on the merits of their appeal, and, as the Court explained in the order denying plaintiffs' preliminary injunction request, courts have historically viewed the President's authority under the Procurement Act broadly. *See, e.g.*, *City of Albuquerque v. Dep't of Interior*, 379 F.3d 901, 914 (10th Cir. 2004) ("Congress chose to utilize a relatively broad delegation of authority in the [Procurement Act]. However, Congress did instruct the President's exercise of authority should establish 'an economical and efficient system for . . . the procurement and supply' of property."); *Chao*, 325 F.3d at 366 (noting that courts have recognized the "necessary flexibility and broad-ranging

8

authority" granted to the President under the Act (quotation omitted)); *AFL-CIO v. Kahn*, 618 F.2d 784, 789 (D.C. Cir. 1979) (en banc) (The Procurement Act "grants the President particularly direct and broad-ranging authority over those larger . . . issues that involve the Government as a whole.").

Contrary to plaintiffs' assertions that the Biden Rule is a novel use of the Procurement Act, courts have upheld executive actions regulating minimum wage for contractors under the Procurement Act. *See, e.g.*, *Kahn*, 618 F.2d at 796. The Sixth Circuit recently explained that requiring contractors to "abide by wage and price controls" has a "'close nexus' to the ordinary hiring, firing, and management of labor." *Kentucky v. Biden*, --- F.4th ----, 2022 WL 43178, at *14 (6th Cir. Jan. 5, 2022). Moreover, as the Court noted previously, Presidents Obama and Trump both issued executive orders and promulgated rules, pursuant to their Procurement Act authority, to regulate contractor minimum wages. Docket No. 31 at 24–26. Thus, the Court disagrees that the Biden Rule is novel, but, even if it is, novelty is not a factor in the Court's analysis. *See Hilton*, 481 U.S. at 776; *Nken*, 556 U.S. at 434.

Plaintiffs cite courts that have struck down President Biden's vaccine mandate for federal contractors, which was issued under the Procurement Act. *See* Docket No. 34 at 5. Each of these cases is distinguishable, however, because, as the Sixth Circuit explained, "none of the history from 1949 to present . . . involves the imposition of a medical procedure upon the federal-contractor workforce under the rationale of 'reducing absenteeism.' The dearth of analogous historical examples is strong evidence that [the Procurement Act] does not contain such a power." *Kentucky*, 2022 WL 43178, at *15. The same cannot be said for regulating contractor minimum wages,

as the Sixth Circuit recognized. *See id.* at *14 (citing *Kahn*, 618 at 785–92).

Finally, plaintiffs reiterate their major-questions doctrine argument. Docket No. 34 at 6–7. As the Court noted previously, "sometimes an agency's exercise of regulatory authority can be of such 'extraordinary' significance that a court should hesitate before concluding that Congress intended to house such sweeping authority in an ambiguous statutory provision." *Am. Lung Ass'n v. E.P.A.*, 985 F.3d 914, 959 (D.C. Cir. 2021) (citing *King v. Burwell*, 576 U.S. 473, 485–486 (2015)). The doctrine applies where "there are special reasons for doubt, the doctrine asks whether it is implausible in light of the statute and subject matter in question that Congress authorized such unusual agency action." *Id.* (citation omitted). Plaintiffs, however, did not show that the doctrine is applicable because they identified no "special reasons for doubt," and the Biden Rule is not "unusual agency action" or a rule of "extraordinary" significance such that the Court should "hesitate before concluding that Congress intended to house such sweeping authority in an ambiguous statutory provision." *See id.* As the Court previously explained, the Biden Rule also does not "significantly alter the balance between federal and state power" and is not an exercise of "vast economic and political significance," *see Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (quotation omitted), because the economic effect of the Biden Rule, $1.7 billion per year over 10 years, *see* 86 Fed. Reg. at 67,194, is below the range that the Office of Management and Budget quantifies to have a measurable effect, in macroeconomic terms, on the gross domestic product. *See* 86 Fed. Reg. 67,224. Plaintiffs provide no new argument in the motion, but simply reiterate their contention that the doctrine applies. Docket No. 34 at 6. Plaintiffs' emphasis does not make them

any more likely to succeed in their argument now than when the Court considered their preliminary injunction motion.

Because plaintiffs have failed to show a strong likelihood that they will succeed on the merits of their appeal, the Court need not consider the other factors for a stay or injunction pending appeal. *See, e.g., Way to Grow*, 2019 WL 669795, at *3 (declining to consider remaining factors where movants failed to show strong likelihood of success); *Aposhian*, 2019 WL 8195243, at *2 (same). The Court thus finds that an injunction pending resolution of plaintiffs' appeal is inappropriate. *See Hilton*, 481 U.S. at 776; *Nken*, 556 U.S. at 434.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiffs' Motion for an Injunction Pending Appeal [Docket No. 34] is **DENIED**.

DATED January 28, 2022.

                                                          BY THE COURT:

                                                          PHILIP A. BRIMMER
                                                          Chief United States District Judge