**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

DUKE BRADFORD *et al.*,

        Plaintiffs,

    v.

U.S. DEPARTMENT OF LABOR, *et al.*,

        Defendants.

Case No. 1:21-cv-03283-NYW-STV

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDG-
MENT AND CROSS-MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

CROSS-STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................... 1

RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS ............ 3

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ........................................................................................................................ 8

I.       This case should be dismissed as constitutionally moot. ............................................ 8

II.      Alternatively, this action should be dismissed as prudentially moot. ......................... 12

III.     The Court should not reach the merits unless it determines it has jurisdiction, but
         regardless, Plaintiffs' claims should be rejected. ........................................................ 13

         A.       Plaintiffs' claims should be denied for the reasons already articulated in the
                  prior briefing and decisions in this case. ....................................................... 13

         B.       To the extent that Plaintiffs raise new arguments not specifically addressed in
                  prior briefing or decisions, these arguments should also be rejected. ............. 16

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) .................................................................................................................7

*Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*,
   7 F.3d 1487 (10th Cir. 1993) ....................................................................................... 12, 13

*Bradford v. U.S. Dep't of Labor*,
   101 F.4th 707 (10th Cir. 2024) *cert denied*, 145 S. Ct. 1047 (2025).......................3, 13, 14, 15

*Bradford v. U.S. Dep't of Labor*,
   No 22-1023 (10th Cir. Feb. 17, 2022) ..................................................................................2

*Brent Elec. Co., Inc. v. Int'l Brotherhood of Elec. Workers Local Un. No. 584*,
   110 F.4th 1196 (10th Cir. 2024) ................................................................................... 8, 9

*Broadband Facility Partners, LLC v. NebraskaLink Holdings, LLC*,
   2022 WL 19298884 (D. Colo. June 24, 2022) ....................................................................13

*Brown v. Buhman*,
   822 F.3d 1151 (10th Cir. 2016).................................................................................... 9, 10

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979)...............................................................................................................17

*Citizens Concerned for Separation of Church & State v. City and Cnty. of Denver*,
   628 F.2d 1289 (10th Cir. 1980)................................................................................... 8, 13

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
   543 U.S. 157 (2004)...............................................................................................................17

*Cunningham v. BHP Petroleum Great Britain PLC*,
   427 F.3d 1238 (10th Cir. 2005)............................................................................................13

*Equal Emp. Opportunity Comm'n v. CollegeAmerica Denver, Inc.*,
   869 F.3d 1171 (10th Cir. 2017)..............................................................................................9

*Friends of the Earth, Inc. v. Laidlaw Env'tironmental Servs.ices, Inc.*,
   528 U.S. 167 ..........................................................................................................................9

*Georgia v. President of the United States*,
   46 F.4th 1283 (11th Cir. 2022) ................................................................................... 15, 16

*Honig v. Doe*,
   484 U.S. 305 (1988)................................................................................................................8

*Jabarah v. Wray,*
 2025 WL 53340 (D. Colo. Jan. 9, 2025) ................................................................12

*Jordan v. Sosa,*
 654 F.3d 1012 (10th Cir. 2011) ......................................................................... 8, 10

*Kentucky v. Biden,*
 23 F.4th 585 (6th Cir. 2022), *affirmed as modified by* 57 F.4th 545 (6th Cir. 2023) ..............................15

*Kingdomware Technologies, Inc. v. United States,*
 579 U.S. 162 (2016) ...........................................................................................10

*Ledbetter v. City of Topeka,*
 318 F.3d 1183 (10th Cir. 2003) ...........................................................................7

*Louisiana v. Biden,*
 55 F.4th 1017 (5th Cir. 2022) .............................................................................18

*Lunnon v. United States,*
 2020 WL 7706053 (D.N.M. Nov. 20, 2020) .........................................................7

*McCulloch v. Maryland,*
 17 U.S. (4 Wheat.) 316 (1819 ............................................................................16

*Nathan M v. Harrison Sch. Dist. No. 2,*
 942 F.3d 1034 (10th Cir. 2019) ..........................................................................11

*Nebraska v. Chavez-DeRemer*
 No. 23-15179 (9th Cir.) .....................................................................................12

*Parker v. Winter,*
 645 F. App'x 632 (10th Cir. 2016) .....................................................................11

*Patrick G v. Harrison Sch. Dist. No. 2,*
 40 F.4th 1186 (10th Cir. 2022) ...........................................................................11

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
 601 F.3d 1096 (10th Cir. 2010) ................................................................... 9, 10, 12

*S. Utah Wilderness Alliance v. Smith ("SUWA"),*
 110 F.3d 724 (10th Cir. 1997) ............................................................................12

*Texas v. EPA,*
 983 F.3d 826 (5th Cir. 2020) ..............................................................................16

*Texas v. Trump,*
 No. 23-40671, 2025 WL 968277 (5th Cir. Mar. 28, 2025) .....................................12

*Tuck v. Un. Servs. Auto. Ass'n,*
    859 F.2d 842 (10th Cir. 1988)......................................................................................8

*West Virginia v. EPA,*
    597 U.S. 697 (2022)...............................................................................................14

*Wilderness Watch v. Ferebee,*
    445 F. Supp. 3d 1313 (D. Colo. 2020)......................................................8, 10, 11

*Willow Creek Ecology v. U.S. Forest Serv.,*
    225 F. Supp. 2d 1312 (D. Utah 2002) ...................................................................12

*Wyoming v. U.S. Dep't of Interior,*
    674 F.3d 1220 (10th Cir. 2012)........................................................................10, 11

**Statutes**

5 U.S.C. § 705 ............................................................................................................. 2, 9

5 U.S.C. § 706(2) ........................................................................................................ 2, 9

28 U.S.C. § 2201 ......................................................................................................... 2, 9

28 U.S.C. § 2202 ......................................................................................................... 2, 9

40 U.S.C. § 101 ............................................................................................................. 14

40 U.S.C. § 121 ............................................................................................................. 14

**Rules**

Federal Rule of Civil Procedure 56(c)..........................................................................7

Federal Rules of Civil Procedure 12(h)(3) ................................................................ 1, 7

**Administrative and Executive Materials**

29 C.F.R. part 23 ....................................................................................................... 1, 10

Executive Order No. 12,866 ...........................................................................................5

Executive Order No. 13,658, *Establishing Minimum Wage for Contractors,*
    79 Fed. Reg. 60,721 (Oct. 7, 2014) ........................................................................3

Executive Order No. 13,838, *Exemption from EO 13658 for Recreational Services on Federal Land,*
    83 Fed. Reg. 25, 341 (May 25, 2018) ............................................................. 1, 2, 4

Executive Order No. 14,026, *Increasing the Minimum Wage for Federal Contractors,*
    86 Fed. Reg. 22,835 (Apr. 27, 2021) ...............................................................*passim*

Executive Order No. 14,236, *Additional Rescissions of Harmful Executive Orders and Actions*
90 Fed. Reg. 13,037 (Mar. 14, 2025) ................................................................................. 3, 10

86 Fed. Reg. 67,126 (Nov. 24, 2021) ............................................................................................2

**Other Authorities**

Arindrajit Dube, U. of Mass., *Impacts of minimum wages: review of the international evidence* (Nov. 2019),
https://perma.cc/W5HJ-ZU2Z ............................................................................................6

*Consistent*, Oxford English Dictionary, https://doi.org/10.1093/OED/2753437657 ........................16

Dep't of Labor, *Final Rule: Increasing the Minimum Wage for Federal Contractors (Executive Order 14026)*,
https://www.dol.gov/agencies/whd/government-contracts/eo14026 (last visited Jun. 23, 2025)...
.......................................................................................................................... 3, 9

Sam.gov, *Wage Determinations*, https://sam.gov/wage-determinations (last accessed June 23, 2025) ...9

## INTRODUCTION

Plaintiffs challenge a Department of Labor ("DOL") rule implementing Executive Order 14,026, which President Biden issued in 2021 ("Final Rule"). Following a lengthy procedural history, on February 24, 2025, Plaintiffs filed a renewed motion for summary judgment on their Administrative Procedure Act and constitutional claims. On March 14, 2025, President Trump rescinded Executive Order 14,026, and shortly thereafter, DOL announced that it is no longer enforcing Executive Order 14,026 or the Final Rule (codified at 29 C.F.R. part 23), and it would take steps, including rescinding the Final Rule, to effectuate the revocation of Executive Order 14,026. Plaintiffs' complaint is therefore moot, this Court lacks subject-matter jurisdiction to decide Plaintiffs' claims, and the action should be dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3).

Because this Court no longer has subject-matter jurisdiction over Plaintiffs' action, the Court should not reach the merits of Plaintiffs' claims. If the Court were to reach the merits, however, Plaintiffs' motion for summary judgment should be denied, and judgment should be entered for Defendants.

## CROSS-STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On April 27, 2021, President Biden issued Executive Order 14,026, which required the inclusion of a clause in certain contracts with the Federal Government setting a minimum wage of $15.00 per hour, subject to annual inflation-indexed increases, for non-tipped "workers working on or in connection with" the covered contract. Executive Order No. 14,026, *Increasing the Minimum Wage for Federal Contractors*, 86 Fed. Reg. 22,835 (Apr. 27, 2021).

2. Executive Order 14,026 also revoked Executive Order 13,838, which had been issued by President Trump in 2018, and had exempted from then-existing federal contractor minimum wage requirements "contracts or contract-like instruments entered into with the Federal Government in connection with seasonal recreational services," including "river running, hunting,

1

fishing, horseback riding, camping, mountaineering activities, recreational ski services, and youth camps," and "seasonal recreational equipment rental for the general public on Federal lands," Executive Order No. 13,838, *Exemption from EO 13658 for Recreational Services on Federal Land*, 83 Fed. Reg. 25,341 (May 25, 2018). *See* 86 Fed. Reg. at 22,836-37.

3. Executive Order 14,026 also directed DOL to issue regulations implementing the Order's requirements and conferred authority upon DOL to enforce those requirements. *Id.* at 22,836.

4. Consistent with that directive, on November 24, 2021, following notice-and-comment rulemaking, DOL published the Final Rule implementing Executive Order 14,026. *See* 86 Fed. Reg. 67,126 (Nov. 24, 2021).

5. The Final Rule was to take effect on January 30, 2022. *Id.*

6. On December 7, 2021, Plaintiffs, a licensed river outfitter, its owner, and a nonprofit trade association seeking to represent river rafting outfitters in Colorado, filed their action challenging the Final Rule under the Administrative Procedure Act and the U.S. Constitution. *See* Compl. ¶¶ 1-11, 51-77, ECF No. 1.

7. Plaintiffs' complaint seeks the following relief:

   (i)     The issuance of a preliminary injunction prohibiting Defendants from enforcing the final rule pursuant to 5 U.S.C. § 705 and 28 U.S.C. § 2201;
   (ii)    A declaratory judgment, pursuant to 5 U.S.C. § 706(2) and 28 U.S.C. § 2202, holding unlawful and setting aside the final rule;
   (iii)   An award of attorneys' fees and costs to Plaintiffs; and
   (iv)    Any other relief as the Court deems just, equitable and proper.

   *Id.* at 20, Prayer for Relief.

8. The parties first litigated Plaintiffs' preliminary injunction motion, which was denied, *see* Order, ECF No. 31, and appealed to the Tenth Circuit, *see* Notice of Appeal, ECF No. 33. A Tenth Circuit motions panel initially granted Plaintiffs' request for an injunction pending appeal enjoining enforcement. *See Bradford v. Dep't of Labor*, Case No. 22-1023, Order (10th Cir. Feb. 17, 2022), ECF No. 45.

9. The parties then briefed summary judgment in district court, *see* ECF Nos. 56, 63, 73, 76.

10. No ruling was issued, and the case was administratively closed pending the Tenth Circuit's resolution of the preliminary injunction appeal. *See* Minute Order, ECF No. 78.

11. In April 2024, the Tenth Circuit affirmed the denial of the preliminary injunction. *See Bradford v. U.S. Dep't of Labor*, 101 F.4th 707 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 1047 (2025).

12. Plaintiffs subsequently filed a renewed motion for summary judgment on February 24, 2025. *See* Pls.' Mot. for Summ. J., ECF No. 93 ("Pls.' Mot.").

13. A few weeks later, on March 14, 2025, President Trump issued an Executive Order revoking Executive Order 14,026. *See* Executive Order No. 14,236, *Additional Rescissions of Harmful Executive Orders and Actions*, 90 Fed. Reg. 13,037 (Mar. 14, 2025).

14. Immediately thereafter, DOL announced that pursuant to section 2(d) of Executive Order 14,236, it was no longer enforcing Executive Order 14,026 or the Final Rule, and that it would take steps to implement and effectuate the revocation of Executive Order 14,026, including rescinding 29 C.F.R. part 23. *See* Declaration of Patricia Davidson ("Davidson Decl.") ¶¶ 5-6, Ex. A; *see also* Dep't of Labor, *Final Rule: Increasing the Minimum Wage for Federal Contractors (Executive Order 14,026)*, https://www.dol.gov/agencies/whd/government-contracts/eo14026 (last visited June 17, 2025).

**RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Undisputed.

2. Undisputed in part, disputed in part. President Obama required the inclusion in certain Federal contracts of a clause requiring a minimum wage of $10.10 per hour for work performed on or in connection with the contracts, subject to annual increases indexed to inflation. *See* Executive Order No. 13,658, *Establishing Minimum Wage for Contractors*, 79 Fed. Reg. 60,721 (Oct. 7, 2014). The implementing regulations did not alter the standards for determining when

3

overtime pay is applicable, which are determined under the Fair Labor Standards Act and the Contract Work Hours and Safety Standards Act.  *See id.* at 60,725-26.

3.  Undisputed.

4.  Disputed that Executive Order 13,838 necessarily exempted all "outfitters and guides."  Executive Order 13,838 exempted "contracts or contract-like instruments entered into with the Federal Government in connection with seasonal recreational services"—including "river running, hunting, fishing, horseback riding, camping, mountaineering activities, recreational ski services, and youth camps"—"or seasonal recreational equipment rental for the general public on Federal lands."  83 Fed. Reg. at 25,341.

5.  Undisputed.

6.  Undisputed that DOL issued a rule updating its regulations to reflect Executive Order 13,838.  The statement that DOL purportedly "agreed" with the President's analysis is a non-factual characterization to which no response is required.

7.  The statement that "President Biden reversed course" is a non-factual characterization to which no response is required.  The remainder of the paragraph is undisputed.

8.  Undisputed in part, and disputed only to the extent that this statement suggests that the Final Rule was published in the Federal Register on November 23, 2021.  *See* 86 Fed. Reg. at 67,126 (Nov. 24, 2021).

9.  Undisputed that the Final Rule stated that "Forest Service special use permits will typically be subject to Executive Order 14026's requirements."  *Id.* at 67,148.  Disputed that DOL determined the applicability of the Final Rule to any particular permits, including those held by Plaintiffs.

10. Undisputed in part, disputed in part, and immaterial. DOL estimated that there were 507,200
"potentially affected firms." *Id.* at 67,196. However, DOL estimated that only 327,300 employees (fewer than the total potentially affected firms) would be "actually affected" in the first
year of implementation and "see an increase in their hourly wage." *Id.* at 67,194. That is
because most employees of potentially affected firms already earn over $15 per hour. *See id.*
at 67,200-01 & tbl.5. Among the 507,200 potentially affected firms, 45,454 operate on Federal
property and lands, but not all of these are special use permittees. *See id.* at 67,196-97 & tbls.2-
3. DOL estimated that the Final Rule will "result in transfer payments for the private sector
of $1.7 billion in Year 1, with an average annualized value of $1.8 billion over ten years." *Id.*
at 67,224. DOL also projected "average annualized direct employer costs" of $2.4 million
total—not for each firm—"[d]uring the first 10 years the rule is in effect." *Id.* at 67,194.

11. Undisputed but immaterial, and subject to clarification. DOL determined that the Final Rule
is "economically significant" solely as that term is understood for purposes of regulatory review pursuant to Section 3(f) of Executive Order 12,866, and not for any other purpose. *See
id.* at 67,194.

12. Undisputed but immaterial.

13. Undisputed but immaterial.

14. Undisputed in part, disputed in part, and immaterial. Undisputed that DOL projected that
the Final Rule "may result in reduced profits in certain instances." *Id.* at 67,206. Disputed
that DOL projected outright losses. Further disputed that DOL projected that any reduced
profits would be ameliorated only by higher prices. Rather, DOL "note[d] that there may be
actions employers can take to mitigate costs, in addition to the various benefits they will observe, such as increased productivity and reduced turnover." *Id.* The Final Rule clarified that
increased costs and reduced profits "hinge on the belief that employers' costs will increase by

more than the associated productivity gains and cost-savings," and specified that "employers could experience multiple benefits associated with this rule that could offset adverse impacts to prices or profits." *Id.*

15. Undisputed but immaterial.

16. Disputed but immaterial. The Final Rule stated, among other things, that the "consensus among a substantial body of research is that disemployment effects can be small or non-existent," and DOL "believes this final rule would result in negligible or no disemployment effects." *Id.* at 67,211 (citing Arindrajit Dube, U. of Mass., *Impacts of minimum wages: review of the international evidence* (Nov. 2019), https://perma.cc/W5HJ-ZU2Z).

17. Disputed but immaterial. The Final Rule did not acknowledge that it might place permittees at a competitive disadvantage with competitors not operating on Federal lands. Instead, DOL concluded that "establishments operating on federal property compete on characteristics other than price." *Id.* at 67,207. The Final Rule specifically recognized that "recreating on Federal lands has many advantages to non-Federal lands (such as aesthetics and remoteness)" and therefore, operators "may be able to remain competitive even after moderate price increases." *Id.*

18. Undisputed but immaterial.

19. Undisputed but immaterial.

20. Undisputed but immaterial.

21. Defendants lack sufficient knowledge to form a belief as to the truth of this statement.

22. Defendants lack sufficient knowledge to form a belief as to the truth of this statement.

23. Defendants lack sufficient knowledge to form a belief as to the truth of this statement.

24. Defendants lack sufficient knowledge to form a belief as to the truth of this statement.

25. Defendants lack sufficient knowledge to form a belief as to the truth of this statement.

26. Defendants lack sufficient knowledge to form a belief as to the truth of this statement.

27. Defendants lack sufficient knowledge to form a belief as to the truth of this statement.

28. Disputed to the extent that this statement suggests that Plaintiffs have shown they have standing at summary judgment. Undisputed that the Court previously held that Plaintiffs had standing at the motion for preliminary injunction stage. *See* Order, ECF No. 31.

29. Undisputed.

30. Undisputed.

31. Undisputed.

32. Undisputed.

33. Undisputed.

34. Undisputed.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id.* "Objection to a federal court's subject-matter jurisdiction 'may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.'" *Lunnon v. United States*, 2020 WL 7706053, at *7 (D.N.M. Nov. 20, 2020) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)). And "[a] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Tuck v. Un. Servs. Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988) (citations omitted).

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (citation omitted), but a "[f]ederal court must in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction[,]"

7

and where a court is "without jurisdiction," it "cannot reach the merits of the dispute[.]" *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980).

## ARGUMENT

### I.    This case should be dismissed as constitutionally moot.

This Court lacks subject-matter jurisdiction, and Plaintiffs' complaint should be dismissed in its entirety because President Trump's Executive Order 14,236 has mooted Plaintiffs' claims by rescinding the policy they challenge. "Under Article III of the Constitution [federal courts] may only adjudicate actual, ongoing controversies." *Wilderness Watch v. Ferebee*, 445 F. Supp. 3d 1313, 1320 (D. Colo. 2020) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). "The doctrine of constitutional mootness means that 'the suit must present a real and substantial controversy with respect to which relief may be fashioned.'" *Brent Elec. Co., Inc. v. Int'l Brotherhood of Elec. Workers Local Un. No. 584*, 110 F.4th 1196, 1207 (10th Cir. 2024) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011)). "Constitutional mootness is therefore grounded in the requirement that any case or dispute that is presented to a federal court be definite, concrete, and amenable to specific relief," and "[t]he crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Id.* (citations omitted).

Recent developments have rendered Plaintiffs' claims moot. Plaintiffs here seek "issuance of a preliminary injunction prohibiting Defendants from enforcing the final rule pursuant to 5 U.S.C. § 705 and 28 U.S.C. § 2201," and a "declaratory judgment, pursuant to 5 U.S.C. § 706(2) and 28 U.S.C. § 2202, holding unlawful and setting aside the final rule," along with "an award of attorneys' fees and costs" and "[a]ny other relief as the Court deems just, equitable and proper." *See* Compl. at 20. But President Trump has already revoked the basis for the Final Rule, Executive Order 14,026, and DOL is in the process of rescinding the Final Rule—i.e., setting it aside. Meanwhile, because DOL is not

enforcing Executive Order 14,026 or the Final Rule, *see* Davidson Decl. ¶ 5[1], Plaintiffs do not need to

comply with its requirements and thus they are not suffering the injuries alleged.  *See* Compl. ¶¶ 47-50

(alleging as injuries "significantly increase[d] wage costs," the need to "limit the amount of hours their

employees can work in a workweek to avoid the need to pay newly-increased overtime wages," and

the need to "limit the availability of multi-day trips, stagger guide staffing, and increase their costs to

customers").  Nor is there any "definite, concrete" relief that this Court could order that would have

any "effect in the real world."  *Brent Elec. Co.*, 110 F.4th at 1207; *see also Brown v. Buhman*, 822 F.3d

1151, 1166 (10th Cir. 2016) (citation omitted) (explaining a "case becomes moot when a plaintiff no

longer suffers actual injury that can be redressed by a favorable judicial decision").

Neither exception to mootness—the voluntary cessation doctrine or the capable-of-repeti-

tion-but-evading-review doctrine—applies. In certain circumstances not applicable here, "[a] defend-

ant's voluntary cessation of a challenged practice does not deprive a federal court of its power to

determine the legality of a practice," *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528

U.S. 167, 189 (2000) (citation omitted).  A defendant asserting mootness has the burden of showing

that (1) "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to

recur," and (2) "[i]nterim relief or events have completely and irrevocably eradicated the effects of the

alleged violation."  *Equal Emp. Opportunity Comm'n v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173-

74 (10th Cir. 2017) (citation omitted).  Still, this burden "frequently has not prevented governmental

officials from discontinuing challenged practices and mooting a case," and the "withdrawal or altera-

tion of administrative policies can moot an attack on those policies."  *Rio Grande Silvery Minnow v.*

*Bureau of Reclamation*, 601 F.3d 1096, 1116-17 (10th Cir. 2010) (citation omitted).  Indeed, "[m]ost cases

---

[1] *See also* Sam.gov, *Wage Determinations*, https://sam.gov/wage-determinations (last accessed June 23, 2025); U.S. Dep't of Labor, *Final Rule: Increasing the Minimum Wage for Federal Contractors (Executive Order 14026)*, https://www.dol.gov/agencies/whd/government-contracts/eo14026 (last accessed June 23, 2025).

that deny mootness following government officials' voluntary cessation rely on clear showings of re-luctant submission by government actors and a desire to return to the old ways." *Brown*, 822 F.3d at 1167 (citation modified).

Here, President Trump specifically rescinded President Biden's Executive Order—the legal basis for the Final Rule Plaintiffs challenge—by his own Executive Order that characterized Executive Order 14,026 as "[h]armful," and determined that its rescission was "necessary to advance the policy of the United States to restore common sense to the Federal Government and unleash the potential of American citizens." *See* 90 Fed. Reg. at 13,037. And DOL has attested and announced publicly that it is currently taking steps to rescind 29 C.F.R. part 23. *See* Davidson Decl. ¶ 6. It is thus absolutely clear that this Administration does not intend to reinstitute the minimum wage for federal contractors reflected in Executive Order 14,026 or the Final Rule. Moreover, as DOL has also attested and an-nounced publicly, it is not enforcing the Final Rule, *see* Davidson Decl. ¶ 5, and accordingly, interim events have completely ended application and enforcement of Executive Order 14,026 and the Final Rule. There is likewise no indication of any "desire to return to the old ways," as the rationale of Executive Order 14,236 illustrates. Thus, the circumstances here mirror those that courts have held moot a legal attack to a withdrawn, changed, or superseded policy. *See, e.g.*, *Rio Grande Silvery Minnow*, 601 F.3d at 1111-21; *Wilderness Watch*, 445 F. Supp. 3d at 1320-23.

Nor does the "capable of repetition yet evading review" exception to mootness apply. "An otherwise moot claim is 'capable of repetition, yet evading review' if '(1) the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" *Wilderness Watch*, 445 F. Supp. 3d at 1322 (quoting *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1229 (10th Cir. 2012)). This doctrine is "narrow," *Jordan*, 654 F.3d at 1034-25, applies "only in exceptional situations," *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 170 (2016) (citation omitted), and turns on

10

"whether something inherent exists in the nature or structure of the governmental action that makes it necessarily of short duration," *Wyoming*, 674 F.3d at 1229.

The Final Rule was published in November 2021, and this case was filed in December 2021. Therefore, Plaintiffs have had nearly four years to litigate this action, during which the parties already fully briefed cross-motions for summary judgment and are doing so a second time. There is also nothing inherent in an administrative rule establishing a minimum wage for federal contractors that makes it too short in duration to be fully litigated prior to its cessation. *Cf. Parker v. Winter*, 645 Fed. Appx. 632, 635 (10th Cir. 2016) ("Challenges to election laws are one of the quintessential categories of cases capable of repetition yet evading review because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election." (citation omitted)). Nor is there any non-speculative reason to believe that Plaintiffs will be subjected to the same rule again—President Trump rescinded EO 14,026. *See Patrick G v. Harrison Sch. Dist. No. 2*, 40 F.4th 1186, 1200-03 (10th Cir. 2022) (holding that even though the challenged action was of too short a duration to be challenged in litigation, the capable-of-repetition exception did not apply because plaintiff had not established that the "wrong that is, or is not, capable of repetition," as "defined in terms of the *precise controversy* it spawns," would likely be "repeated" (citation modified)); *see also Nathan M v. Harrison Sch. Dist. No. 2*, 942 F.3d 1034, 1040-47 (10th Cir. 2019). Accordingly, Plaintiffs here could not carry their burden of establishing that the "capable of repetition yet evading review" exception to mootness applies. *Wilderness Watch*, 445 F. Supp. 3d at 1322 ("Unlike the voluntary mootness exception, the plaintiff has the burden of showing that this exception applies.").

For these reasons, Plaintiffs' action is moot as a constitutional matter and should be dismissed. Indeed, the Fifth Circuit has already concluded that another challenge to the same executive order and

implementing rule is moot. *Texas v. Trump*, No. 23-40671, 2025 WL 968277, at *1 (5th Cir. Mar. 28, 2025).[2]

## II.     Alternatively, this action should be dismissed as prudentially moot.

For similar reasons, this action is moot as a prudential matter. "Prudential mootness applies in circumstances where a controversy 'though not moot in the strict Article III sense is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief that it has the power to grant.'" *Willow Creek Ecology v. U.S. Forest Serv.,* 225 F. Supp. 2d 1312, 1318 (D. Utah 2002) (quoting *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("*SUWA*")); *Rio Grande Silvery Minnow*, 601 F.3d at 1121 (same). "Prudential mootness has particular applicability to cases where the relief sought is an injunction against the government," or "when [a] declaratory judgment is sought," *Willow Creek*, 225 F. Supp. 2d at 1318 (citations omitted), because such mootness "arises out of the court's general . . . prospective equitable remedies, especially . . . where considerations of comity for coordinate branches of government come into play." *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1492 (10th Cir. 1993) (citation modified). "Therefore, under prudential mootness, the inquiry is, 'have the circumstances changed since the beginning of the litigation that forestalls any occasion for meaningful relief.'" *Willow Creek*, 225 F. Supp. at 1318 (quoting *SUWA*, 110 F.3d at 727); *Jabarah v. Wray*, 2025 WL 53340, at *3 (D. Colo. Jan. 9, 2025) (same).

As already demonstrated, there can be no doubt that the circumstances have changed materially since the start of this litigation in a manner that clearly forestalls any occasion for meaningful relief. Plaintiffs sued to enjoin and declare unlawful DOL's Final Rule. *See* Compl., Prayer for Relief. But now, the Executive Order forming the basis for the Final Rule and conferring the authority to

---

[2] In another challenge, the parties have deferred briefing on mootness until DOL completes its rescission of the challenged rule. *See Nebraska v. Chavez-DeRemer*, No. 23-15179 (9th Cir.), ECF Nos. 90, 92.

enforce the Final Rule has been revoked; DOL is in the process of rescinding the Final Rule; and DOL is no longer enforcing the Final Rule. *See* Davidson Decl. ¶¶ 5-6; *Bldg. & Constr. Dep't*, 7 F.3d at 1492 ("[A] court may decline to grant declaratory or injunctive relief where it appears that a defendant, usually the government, has already changed or is in the process of changing its policies or where it appears that any repeat of the actions in question is otherwise highly unlikely."). Therefore, there is no injury for this Court to remedy, and comity and respect for a coordinate branch of government support a finding of prudential mootness.

**III.   The Court should not reach the merits unless it determines it has jurisdiction, but regardless, Plaintiffs' claims should be rejected.**

A "[f]ederal court must in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction[,]" and where, as here, the Court is "without jurisdiction," "[it] cannot reach the merits of the dispute[.]" *Citizens Concerned for Separation of Church & State*, 628 F.2d at 1301; *see also Broadband Facility Partners, LLC v. NebraskaLink Holdings, LLC*, 2022 WL 19298884, at *1 (D. Colo. June 24, 2022) ("A court should not proceed unless it has first assured itself that jurisdiction exists." (citing *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005)). Specifically, the Court cannot decide Plaintiffs' claims that the Procurement Act does not authorize the Final Rule; that, if it does, the Procurement Act is an unconstitutional delegation of lawmaking authority; and that the Final Rule is arbitrary and capricious because it rescinded the exemption for businesses like Plaintiffs without adequate consideration. *See* Pls.' Mot. at 6-29. But even if the Court were to consider Plaintiffs' arguments, they should be rejected.

**A.   Plaintiffs' claims should be denied for the reasons already articulated in the prior briefing and decisions in this case.**

In the event the Court considers Plaintiffs' merits arguments, those arguments should be rejected for the reasons set forth in the prior briefing and decisions in this case.

To start the Procurement Act authorizes the minimum wage directive because the directive "permissibly regulates the supply of nonpersonal services and advances the statutory objectives of economy and efficiency," *Bradford*, 101 F.4th at 718, and the Tenth Circuit specifically determined that the directive has a "sufficiently close nexus to the values of economy and efficiency," *id.* at 722; *see also* Order at 26, ECF No. 31. For the reasons previously asserted, this is also not an "extraordinary case[] in which the history and the breadth of the authority that [the agency] has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority," and so the major questions doctrine has no application here. Defs.' Cross-Mot. for Summ. J. & Opp. to Pls.' Mot. for Summ. J. ("Defs.' Cross-Mot.") at 25-27, ECF No. 63 (quoting *West Virginia v. EPA*, 597 U.S. 697, 721 (2022)).

Plaintiffs' "nondelegation challenge is untenable" as well because the Procurement Act "only authorizes executive orders that 'the President considers *necessary*' to promote an '*economical*' and '*efficient*' system for procuring and supplying goods and services," and "[t]hese italicized terms . . . channel executive discretion because they encompass only actions that the President considers necessary to increase productivity or quality of service in procurement and supply with little or no waste." *Bradford*, 101 F.4th at 729 (citations omitted); *see also* Order at 44-46 & n.9, ECF No. 31 ("The Supreme Court has only found Congress to have failed to provide an intelligible [principle] twice in the last 87 years, and the Tenth Circuit has specifically found the Procurement Act meets the test.").

And Plaintiffs' arbitrary and capricious challenge fails because, as the Tenth Circuit explained with regards to rescission of the 2018 exemption for recreational service and equipment providers, "the agency had *no discretion* to act otherwise." *Bradford*, 101 F.4th at 731. Executive Order 14,026 directed DOL to "issue regulations by November 24, 2021, to implement the requirements of this order," 86 Fed. Reg. at 22,836, and "compelled" DOL "to rescind the 2018 executive order, which created the exemption," *Bradford*, 101 F.4th at 731 (citing 86 Fed. Reg. at 22,836-37). Under such

14

circumstances, to decline to issue the Final Rule or "to maintain the exemption would have been 'in clear derogation of both the letter and spirit' of the 2021 order.'" *Bradford*, 101 F.4th at 731 (quoting 86 Fed. Reg. at 67,154). "[D]ue to the prescriptive nature of Executive Order 14026, [DOL] d[id] not have the discretion to implement alternatives that would violate the text of the Executive order, such as the adoption of a higher or lower minimum wage rate, or continued exemption of recreational businesses." 86 Fed. Reg. at 67,216. Thus, "it would have been futile for DOL to have considered comments advocating alternatives that it lacked discretion to adopt," as "to consider and adopt any such alternatives would require DOL to defy an executive order—which would clearly constitute an arbitrary and capricious agency action." *Bradford*, 101 F.4th at 731.

Accordingly, Defendants hereby incorporate by reference their merits arguments as set forth in their preliminary injunction opposition, ECF No. 21 (statutory authority at 10-13; arbitrary and capricious at 13-16; non-delegation at 16-18); their original cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment, ECF No. 63 (statutory authority at 11-28; arbitrary and capricious at 28-35; major questions at 25-27; non-delegation at 27-28); and their original reply in support of their cross-motion for summary judgment, ECF No. 76 (statutory authority at 2-12; arbitrary and capricious at 13-20; major questions at 9-12; non-delegation at 12-13), as well as the Court's Order denying the motion for preliminary injunction, ECF No. 31 (statutory authority at 17-32; arbitrary and capricious at 32-41; non-delegation at 42-46); and the Tenth Circuit's opinion affirming, *Bradford*, 101 F.4th at 719-30 (statutory authority), 730-33 (arbitrary and capricious), 728-30 (non-delegation). For the reasons set forth therein, the minimum wage directive was consistent with the Procurement Act and the U.S. Constitution, and the Final Rule was not otherwise arbitrary and capricious under the Administrative Procedure Act. Plaintiffs' summary judgment motion, ECF No. 93, should be denied, and the Court should enter judgment for Defendants on all counts.

**B. To the extent that Plaintiffs raise new arguments not specifically addressed in prior briefing or decisions, these arguments should also be rejected.**

Plaintiffs for the first time urge the Court to adopt the narrow construction of the Procurement Act embraced by the Sixth Circuit in *Kentucky v. Biden*, 23 F.4th 585 (6th Cir. 2022), *affirmed as modified by* 57 F.4th 545 (6th Cir. 2023), and by a single judge of the Eleventh Circuit in *Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022), in an opinion not joined in relevant part by the other members of the panel, *see id.* at 1308 (Edmondson, J., concurring in the result); *id.* (Anderson, J., concurring in part and dissenting in part).  That reasoning is flawed for several reasons.

*First*, the statutory text refutes the proposition that a presidential directive is "consistent with this subtitle," 40 U.S.C. § 121(a), only if effectuates "specific provision[s]" in the subtitle, *Georgia v. President of the United States*, 46 F.4th 1283, 1295 (11th Cir. 2022) (opinion of Grant, J.).  The Procurement Act authorizes the President to "prescribe policies and directives that [he] considers necessary to carry out this subtitle," so long as the policies are "consistent with this subtitle."  40 U.S.C. § 121(a).  "[T]his subtitle" includes basic authorities for procurement and property management, and among its provisions is 40 U.S.C. § 101(1), which states that the subtitle's "purpose … is to provide the Federal Government with an economical and efficient system for," among other things, "[p]rocuring and supplying property and nonpersonal services, and performing related functions including contracting."  *Id.*

By its plain terms, § 121(a) gives the President broad discretion to direct agencies' performance of their contracting functions.  The word "necessary" has a range of meanings, but "it frequently imports no more than that one thing is convenient, or useful, or essential to another."  *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 413 (1819).  That interpretation is appropriate here given Congress's authorization for the President to act as he "*considers* necessary," 40 U.S.C. § 121(a) (emphasis added).  *See Texas v. EPA*, 983 F.3d 826, 837 (5th Cir. 2020) (statute providing that EPA "'may' make changes that it 'deems necessary'" effectively "delegated discretionary authority to EPA to determine

16

when adjustments should be made").  And "consistent" means "congruous" or "compatible."  *Consistent*, OXFORD ENGLISH DICTIONARY, https://doi.org/10.1093/OED/2753437657.  Section 121(a) thus authorizes directives that the President considers useful to guide agencies in carrying out the functions covered by "this subtitle," as long as they are "consistent with" the provisions of "this subtitle."  And directives are "consistent with" those provisions if they do not contradict the provisions, including the objectives articulated in § 101.

If the President's authority under § 121(a) were limited to issuing directives necessary to carry out specific statutory provisions, then it would have made no sense for Congress to specify that the President's directives must be "consistent with" the statute, because that would have been surplusage: A directive that carries out a statute's express terms is necessarily consistent with the statute.  The "consistent with" language implies that the President has authority to issue directives not limited to effectuating the statute's express terms, so long as they advance the articulated objectives of economy and efficiency.

*Second*, while Congress may have enacted the Procurement Act because it was concerned, in the wake of World War II, about "'wasteful practices'" in procurement, *Georgia*, 46 F.4th at 1293 (opinion of Grant, J.), it is "'the provisions of our laws rather than the principal concerns of our legislators by which we are governed,'" *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004).  The authority specified by the Procurement Act's text extends well beyond the narrow scope that would have been sufficient to address Congress's concerns.

*Finally*, the *Chrysler* footnote Plaintiffs cite sheds no meaningful light on the construction of the Act.  *See* Pls.' Mot. at 9-10.  The issue in *Chrysler* was whether regulations requiring the disclosure of certain information had "the 'force and effect of law,'" which turned on whether there was "a nexus between the regulations and some delegation of the requisite legislative authority by Congress."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 304 (1979).  The regulations were putatively authorized by an executive

17

order requiring that government contractors "provide equal employment opportunity regardless of race or sex." *Id.* at 286; *see id.* at 303. The Supreme Court concluded that it was "not necessary to decide whether" the executive order was authorized by the Procurement Act, or by other statutes, because the Court found it sufficiently clear that the *regulations* were not contemplated by any of the statutes. *Id.* at 304-06. In the footnote in question, the Court observed that "[l]ower courts ha[d] suggested" the Procurement Act "was the authority for predecessors of" the executive order, but it noted that "these suggestions were dicta" and that the Procurement Act contains no "specific reference to employment discrimination." *Id.* at 304 n.34. As the Fifth Circuit recognized in *Louisiana*, the footnote's "'specific reference'" language, which was itself "dicta," cannot be read as "a narrowing instruction for interpretation of" the Procurement Act. *Louisiana v. Biden*, 55 F.4th 1017, 1025-26 & n.24 (5th Cir. 2022).

Accordingly, Plaintiffs' argument on this score should be rejected.

## CONCLUSION

For the reasons set forth above, the present action should be dismissed in its entirety as moot or judgment entered in favor of Defendants.

Dated: June 24, 2025                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General

                                        JACQUELINE COLEMAN SNEAD
                                        Assistant Branch Director

                                        /s/ Taylor Pitz
                                        TAYLOR PITZ
                                        CA Bar No. 332080
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L St. NW

Washington, DC 20005
Telephone: (202) 305-5200
Email: taylor.n.pitz@usdoj.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

I hereby certify that on June 24, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

kerryhunt@pacificlegal.org

mpoon@pacificlegal.org

ssimpson@pacificlegal.org

kate.talmor@usdoj.gov

jkintz@democracyforward.org

/s/ Taylor Pitz
TAYLOR PITZ
CA Bar No. 332080
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Telephone: (202) 305-5200
Email: taylor.n.pitz@usdoj.gov

*Attorney for Defendants*